On appellant's petition for reconsideration filed June 18, reconsideration allowed; former opinion (263 Or App 440, 328 P3d 782) modified and adhered to as modified August 6, petition for review denied December 11, 2014 (356 Or 575)

### STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

### AMANDA BURCIAGA,
*Defendant-Appellant.*

Marion County Circuit Court
09C49149; A146161

333 P3d 1098

Chris W. Dunfield for petition.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Rasmussen, Judge pro tempore.

DUNCAN, P. J.

**DUNCAN, P. J.**

In our decision in *State v. Burciaga*, 263 Or App 440, 328 P3d 782 (2014), we concluded that the trial court correctly denied defendant's motion for judgment of acquittal on two counts of criminal mistreatment in the first degree, ORS 163.205. As explained in our previous opinion, defendant left her two young children alone with her boyfriend, Ros, while she went out of town on several occasions, knowing that Ros had abused her older child, J. On one of those occasions, J was seriously injured, and, on a subsequent occasion, the younger child, N, was killed. We rejected defendant's argument that her conduct did not constitute the "withhold[ing of] necessary and adequate * * * physical care" for the purposes of ORS 163.205 and, accordingly, affirmed the judgment of conviction. Defendant now seeks reconsideration, contending that our decision contained factual errors. *See* ORAP 6.25(1)(a) (factual error is appropriate basis for reconsideration). We allow reconsideration to correct a factual error and adhere to our previous opinion as modified.

Defendant takes issue with the italicized part of the following excerpt from our previous opinion:

"Following the early-February 2008 assault, J was vomiting, had a fever, was bruised, and was missing clumps of hair. Defendant photographed the injuries and took J to the emergency room, *where she learned that J's bruising and liver damage indicated that he had been subjected to an intentional and substantial assault. She was told that J's injuries were consistent with being punched, kicked, or stomped by an adult.*"

263 Or App at 450 (emphasis added). Defendant contends that the italicized wording is not supported by the record to the extent that there is no direct evidence that defendant knew or was told those things. We modify that part of the opinion to state:

"Following the early-February 2008 assault, J was vomiting, had a fever, was bruised, and was missing clumps of hair. Defendant photographed the injuries and took J to the emergency room, where she learned that J had elevated liver enzymes and was instructed to follow up with her pediatrician. Although defendant was asked if it was

possible that J had been abused, she denied that possibility and failed to mention that he had been staying with someone who had been convicted of assaulting him. If defendant did not believe that Ros had abused J before she took him to the emergency room, it strains credulity to think that being questioned about possible abuse would not have caused her to suspect, if not believe, that Ros had again abused J as he had done in the past.[2]

---

[2] In rejecting defendant's argument that her conduct did not constitute first-degree criminal mistreatment, the trial court stated:

"'[S]he had three chances to do it right. Upon his conviction in Washington County for abusing the child, she had a right to make choices. In fact, there's no doubt in my mind but that she knew what the judgment said and in light of that and in light of the abuse, she chose Mr. Ros as opposed to choosing to protect the children. The second time would have been February 8th when she took the pictures and mailed them off to [her] father of the bruises * * *. Clearly, this put her on notice of Mr. Ros' abusive nature and what did she do? The next day she left for Las Vegas.'

"We agree that the information available to defendant after the early-February 2008 incident gave her notice that Ros had again abused J."

In addition, we modify another part of our former opinion, also describing the early-February assault, to state:

"In early February 2008, defendant went out of town and left J and N with Ros. J was three years old, and N was two years old. When defendant returned on the night of February 7, J was throwing up and had a fever. The next morning, defendant observed that J had 'pink spots' that she ultimately recognized as bruises on his chest and was missing clumps of hair from the top of his head. She asked Ros about J, and he responded that J was just sick. Defendant called her father, who suggested that she photograph J's injuries and send the photographs to him. Once he saw the photographs, defendant's father suggested she take J to the doctor. Defendant took J to the emergency room later that day. J was bruised in an uncommon pattern that indicated that his injuries were inflicted, not accidental. X-rays were

taken, and there was no evidence of fractures at that time. Lab tests revealed that J had elevated liver enzymes; emergency room staff advised defendant of J's elevated liver enzymes and instructed her to schedule a follow-up visit for J with a pediatrician. In response to questions from emergency room staff, defendant denied that J could have been abused. She did not mention that J had been staying with someone who had been convicted of assaulting him. A doctor later determined that J had suffered crushed liver damage that was consistent with being punched, kicked, or stomped by an adult."

263 Or App at 442-43.

Defendant further contends that we should reconsider defendant's claim of error in light of the corrected facts. We have done so, and we adhere to our previous analysis and conclusion.

Reconsideration allowed; former opinion modified and adhered to as modified.